UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

HENRY CHU,                                   :

                 Petitioner,     :     **REPORT AND RECOMMENDATION**

         - against -                     :     **TO THE HONORABLE RICHARD M. BERMAN**[*]

UNITED STATES OF AMERICA,                    :

                 Respondent.    :     06 Civ. 13509 (RMB)(FM)

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.     Introduction

        In this habeas corpus proceeding brought pursuant to 28 U.S.C. § 2255, pro se petitioner Henry Chu ("Chu") challenges his conviction, following a three and one-half week jury trial before Your Honor, on one count of conspiracy to commit bank fraud, mail fraud, and wire fraud, and one count of conspiracy to launder money. On February 25, 2005, Chu was sentenced to sixty months of imprisonment, to be followed by three years of supervised release, a $200 mandatory special assessment, and restitution in the amount of $683,632,800.23. Chu claims that he should be granted habeas relief because both his trial and appellate counsel were ineffective and because the trial court lacked subject matter jurisdiction.

---

[*]     This Report and Recommendation was prepared with the assistance of Harlan Zaback, a student at the California Western School of Law, who served as an intern in my Chambers.

For the reasons that follow, Chu's petition should be denied. Additionally, because he has failed to make a substantial showing of the denial of a constitutional right, he should be denied a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

II. Factual Background

Inasmuch as the case was tried before you, I have taken the liberty of not providing transcript citations for the following factual summary.

A. Fraudulent Scheme

Chu and his coconspirators (collectively, the "Conspirators") were involved in an international bank fraud scheme that began in or around 1998. Their activities led to the loss of more than $650 million by approximately nineteen banks. The Conspirators used four affiliated companies – Allied Deals, Inc., Hampton Lane, Inc., SAI Commodity, and RBG Resources PLC (collectively, the "Companies") – to accomplish the scheme. They obtained loans from numerous banks (collectively, the "Victim Banks") by disguising the Companies as legitimate businesses involved in the arms-length purchase and sale of non-ferrous metals. They secured the loans using sham accounts receivable from customers. The Victim Banks issued loans to the Companies in the belief that they would be repaid when the Companies' customers paid for the metal they had purchased. Most of these purported transactions, however, simply did not exist.

In the fall of 2001, the scheme began to unravel because the Conspirators were unable to maintain the cash flow necessary to make timely loan payments and some

of the Victim Banks became suspicious of the legitimacy of the Companies and their customers.

On May 3, 2002, British law enforcement officials raided one of the Companies' offices in London. Shortly thereafter, agents of the Federal Bureau of Investigation raided the Companies' offices in the United States.

B. Chu's Role in the Scheme

Chu helped to establish and manage a number of the Companies' alleged customers. In addition, he played an active role in the efforts to convey the false impression that the customers were legitimate, independent entities. For example, Chu served as a contact person for several of the "customers" so that he could respond in the event that a representative of one of the Victim Banks tried to contact the customer. Chu also used his banking knowledge to secure loans from new banks and increase the Companies' lines of credit with existing Victim Banks.

Chu was arrested on April 29, 2003.

C. FDIC Stipulation

Some of the Victim Banks were FDIC insured; others were not. (See Pet. Ex. 2). At trial, the parties stipulated that five of the banks were FDIC insured. (See Docket No. 380 (letter from Ass't U.S. Att'y, Marcus A. Asner, to the Court, dated Apr. 17, 2007 ("Asner Letter"), Ex. A ("Stipulation"))).

D.  Chu's Defense

Chu did not testify at trial or offer any witnesses on his own behalf. (Resp't's Br. on Appeal at 26). His defense strategy was to concede that there was a "fraudulent scheme," but assert that Chu was not a knowing participant.

E.  Verdict and Sentencing

On May 12, 2004, the jury convicted Chu on one count of conspiracy to commit bank fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. § 371, and one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Chu subsequently requested a sentence below the applicable Sentencing Guidelines range. Your Honor granted that request, sentencing Chu, on February 25, 2005, to a term of sixty months of imprisonment, rather than a sentence of between 235 to 293 months, which the Probation Department had calculated as the Guidelines range. The Court also imposed a three-year term of supervised release, and ordered Chu to pay a $200 mandatory special assessment and restitution in the amount of $683,632,800.23.

F.  Subsequent Procedural History

Chu appealed his conviction and sentence on the grounds that: (1) his motion for a severance was wrongfully denied; (2) the evidence underlying his conviction on the money laundering conspiracy count was insufficient; and (3) the prosecution's opening statement deprived him of a fair trial. See United States v. Chu, 183 Fed. Appx.

94, 96-97 (2d Cir. 2006). On May 31, 2006, the Court of Appeals affirmed Chu's conviction and sentence. Id. at 99.

On November 28, 2006, Chu timely filed this petition. Chu claims that: (1) his trial counsel was ineffective for failing to challenge the indictment as insufficient, "collud[ing] with the prosecution to stipulate to 'facts' that resulted in a greater sentence," and failing to object to restitution that was not "legally permissible given the real facts of the matter"; (2) his appellate counsel was ineffective for failing to raise on appeal the issues that rendered his trial counsel ineffective; and (3) the trial court lacked subject matter jurisdiction over his case. (Pet. ¶ 12.A; Pet'r's Mem. at 27-32).

III. Discussion

A. Section 2255

The statute controlling Chu's right to collateral relief is 28 U.S.C. § 2255 ("Section 2255"), the first sentence of which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Relief under this statute may be based only on "constitutional error . . . or an error of law or fact that constitutes a 'fundamental defect which inherently

results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  Among the reasons for circumscribing relief in this manner are "a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place."  Id.

Section 2255 is not a substitute for a direct appeal.  Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998).  Accordingly, claims which could have been raised on a direct appeal but were not generally are unreviewable under Section 2255, unless the petitioner is able to show "cause for failing to raise the claim at the appropriate time and prejudice from the alleged error."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam) (citation omitted).  A petitioner also may circumvent his failure to raise a claim on direct appeal when he is able to show that he is actually innocent.  Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may by raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (citations omitted).

While the failure to pursue a direct appeal generally dooms a Section 2255 motion, an exception exists for ineffective assistance of counsel claims, which the Supreme Court has held need not be incorporated into a criminal defendant's direct appeal.  Massaro v. United States, 538 U.S. 500, 504 (2003).  As the Massaro court

explained, because the trial judge is in the best position to assess the merits of an ineffective assistance claim, "a motion brought under [Section] 2255 is preferable to direct appeal for deciding [such] claims." Id.

      B.      Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of trial counsel, Chu must demonstrate that his counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Under Strickland, there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

1. Chu's Indictment

Chu claims that his trial counsel was ineffective because "he allowed . . . [Chu] to be sentenced for something that was not in the indictment." As he explains, the indictment named only ten FDIC and non-FDIC banks, yet he was ordered to pay restitution to nineteen banks. (Pet'r's Mem. at 30).

For an indictment to be facially sufficient, it "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) (internal quotation marks omitted). Thus, "an indictment is sufficient if it, first, contains the elements of the offense[s] charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see also Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government.").

Here, the indictment clearly met these requirements. Count One of the indictment, which charged Chu with conspiracy to commit bank, mail, and wire fraud, states that "[t]he banks from which the Companies obtained loans included Chase, Fleet Bank, PNC Bank, KBC Bank, HVB, Dresdner, China Trust, Senstar and General Bank, among others . . . ." (Docket No. 66 (Indictment) at 11-12 (emphasis added)). Therefore,

as the indictment makes clear, the scope of the fraud was not limited to specifically-identified banks.

### 2. Stipulation

Chu also contends that his trial counsel was ineffective because he "apparently colluded with the prosecution to stipulate to 'facts' that resulted in a greater sentence than was legally permissible given the real facts of the matter." (Pet'r's Mem. at 27-28). This argument proceeds on two mistaken assumptions: first, that Chu could only be required to make restitution to FDIC-insured banks; second, that the stipulation was erroneous.

In sentencing Chu on Count One, the Court was required to impose an order of restitution pursuant to 18 U.S.C. § 3663A if the crime charged involved fraud and deceit. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). Although Chu denied any personal involvement, he conceded at trial that there was a fraudulent scheme. He also does not contest the amount of losses attributable to each of the Victim Banks.

Chu's contention is that, despite the existence of a scheme that led to substantial losses, he can only be held liable for losses attributable to Victim Banks which were FDIC insured. However, the conspiracy charged in Count One of the indictment had three objects, only one of which was bank fraud. (See Indictment ¶¶ 42-44). Since the same conduct on the part of the defendants established each object of the conspiracy, Chu would have been liable for the full amount of the losses of the Victim Banks even if

bank fraud had not been an object of the conspiracy. Whether the Victim Banks were federally insured therefore is irrelevant.

Indeed, a defendant charged with fraud must make restitution not only for "losses attributable solely to the offense of conviction," but also "to all losses caused in the course of a defendant's criminal conduct, <u>whether the defendant is convicted of each of those offenses or not</u>." <u>United States v. Boyd</u>, 222 F.3d 47, 50 (2d Cir. 2000) (quoting <u>United States v. Collins</u>, 209 F.3d 1, 3 (1st Cir. 1999)). Therefore, even if Chu himself had played a direct role in the defrauding of only a handful of banks, he still would be liable for the entire restitution amount because of his involvement in the conspiracy. <u>See, e.g.</u>, <u>Lee v. United States</u>, No. 05 Civ. 05844 (JSR)(THK), 2007 WL 1987868, at *6 (S.D.N.Y. July 9, 2007) ("Petitioner was not held responsible for [the restitution of] the entire conspiracy, though the district court appear[ed] to have had authority to do so . . . ."); <u>United States v. Dupre</u>, No. 04 Cr. 267 (DLC), 2007 WL 1589451, at *5 (S.D.N.Y. June 4, 2007) (restitution was proper for "all losses caused during the course of the criminal scheme," even though defendant was convicted for a narrower time period).

Turning to the second branch of his argument, Chu claims that his trial attorney entered into a stipulation which erroneously conceded that five Victim Banks were FDIC insured. According to Chu, General Bank was not FDIC insured and should not have been part of the stipulation.

A letter from the FDIC attached to Chu's petition confirms that four of the banks named in the stipulation are FDIC insured. (See Pet. Ex. 2 (letter from Josie Walters-Tucker of the FDIC to Chu, dated Sept. 7, 2006 ("Tucker Letter"))). Thus, the letter states that as of September 7, 2006:

> (1) J.P. Morgan Chase & Co. was insured under FDIC certificate #628;
>
> (2) Fleet National Bank previously had been insured under FDIC certificate #6357;
>
> (3) PNC Bank, N.A. was insured under FDIC certificate #6384; and
>
> (4) China Trust Bank was insured under FDIC certificate #19416.

(Id.).

With respect to the fifth bank, Gerard Lob, who ran General Bank's New York office, testified at trial as follows:

> Q     Were the deposits of General Bank insured by the federal, FDIC?
>
> A     Yes, they were.
>
> Q     The Federal Deposit Insurance Corporation?
>
> A     Insurance corporation, yes.

(Asner Letter at 14). This testimony alone was sufficient to establish that General Bank was FDIC insured. See United States v. Pascarella, 84 F.3d 61, 71 (2d Cir. 1996)

(affirming bank fraud conviction based on testimony of FBI agent that the bank was "insured by the FDIC").

In his motion, Chu argues that Lob's testimony and the stipulation both are wrong because the FDIC letter states that, as of September 7, 2006, "we don't show [General Bank] in our system as insured but Cathay Bank is [insured] under FDIC certificate #18503." (Tucker Letter). This statement, however, is not surprising since General Bank merged with Cathay Bank on October 20, 2003. See Cathay General Bankcorp Form 10-Q for the 3d Quarter of 2003 (available at http://www.cathaybank.com/doc/Form10Q-3Q03.pdf) (last visited on Mar. 21, 2008). Chu has not introduced any evidence, nor is there any reason to believe, that General Bank was not FDIC insured between 1998 and May 14, 2002, the period during which the conspiracy charged in Count One of the indictment is alleged to have existed.

Chu's contentions with respect to the Victim Banks therefore do not entitle him to any relief.

### C. Ineffective Assistance of Appellate Counsel

Chu also claims that his appellate counsel was ineffective. (See Pet'r's Mem. at 30-32). This claim also must be judged by the Strickland standard. See Evitts v. Lucey, 469 U.S. 387, 395-97 (1985). Consequently, Chu must show that his appellate counsel's performance "fell below an objective standard of reasonableness" and that there

is a "reasonable probability" that a different result would have been obtained "but for counsel's unprofessional errors." Strickland, 466 U.S. at 688, 694.

In his petition, Chu faults his appellate counsel for not appealing on the basis of his trial counsel's errors. (See Pet'r's Mem. at 30-32). However, as previously discussed, the claims that Chu advances with respect to his trial counsel are meritless. Accordingly, Chu's appellate counsel cannot be faulted for failing to present these nonmeritorious issues on appeal. See Feliciano v. United States, No. 01 Civ. 9398 (PKL), 2004 WL 1781005, at *8 (S.D.N.Y. Aug. 10, 2004) ("Because petitioner's ineffective assistance [of trial counsel] claim is without merit, counsel's decision not to pursue the claim on appeal was certainly not an omission of a significant issue.").

D.   Lack of Subject Matter Jurisdiction

Finally, Chu asserts that Your Honor lacked subject matter jurisdiction because the indictment was "structurally modified" to include "other banks." (See Pet'r's Mem. at 32-34). It is, of course, true that the "failure to charge [a defendant] either by indictment or information, as required by Federal Rule of Criminal Procedure 7(a), is fatal to the convictions that follow[]," and "deprives [the] court of jurisdiction." United States v. Cocoman, 903 F.2d 127, 130 (2d Cir. 1990) (internal citation omitted). Here, however, it is undisputed that Chu was charged with several federal crimes in an indictment. The Court therefore had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, which grants district courts "original jurisdiction, exclusive of the courts of the States, of all offenses

against the laws of the United States." Chu's claim that the Court lacked subject matter jurisdiction therefore would be baseless, even if it were not procedurally barred for failure to raise it on direct appeal.

IV.     Conclusion

For the foregoing reasons, Chu's motion pursuant to 28 U.S.C. § 2255 should be denied. Additionally, he should be denied a certificate of appealability because he has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2).

V.      Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Richard M. Berman, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b). Any requests for an extension of time for filing objections must be directed to Judge Berman. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated: New York, New York
March 21, 2008

FRANK MAAS
United States Magistrate Judge

Copies to:

Marcus A. Asner
Assistant United States Attorney
Office of the United States Attorney
 for the Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Henry Chu
Reg. No. 55029-054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, New York 11232